**CITY OF WILLMAR, Minnesota, Plaintiff,**

v.

**SHORT–ELLIOTT–HENDRICKSON, INC., Petitioner, Appellant,**

Adolfson & Peterson, Inc., Defendant,

Clow Corporation, Respondent.

No. C8–92–1614.

Supreme Court of Minnesota.

March 11, 1994.

Thomas L. Adams, Mark J. Heley, William M. Hart, Mark A. Bloomquist, Meagher & Geer, Minneapolis, for appellant.

Robert E. Cattanach, Kevin C. Quigley, Oppenheimer, Wolff & Donnelly, St. Paul, for respondent.

SIMONETT, Justice.

This case returns to us asking whether a defendant's crossclaim for indemnity and contribution against a codefendant will lie when the plaintiff's cause of action against the codefendant is barred by the statute of limitations. We hold the crossclaim survives, and we reverse.

This litigation began in 1987 when the City of Willmar, plagued by a malfunctioning waste water treatment plant, sued three defendants: the consulting engineers, Short–Elliott–Hendrickson, Inc. (Short–Elliott); the manufacturer of a critical component, Clow Corporation; and the general contractor, Adolfson & Peterson, Inc. When this case first came before us, the main issues were the application of two statutes of limitation to the City's claims: section 336.2–725, which provides a 4–year limitation for Uniform Commercial Code claims;[1] and section 541.-051, the 2–year limitation period for defective condition of an improvement to real estate.[2] See City of Willmar v. Short–Elliott–Hendrickson, Inc., 475 N.W.2d 73 (Minn.1991) (City of Willmar I).

In City of Willmar I, we held the City's claim against Clow Corp., the manufacturer-seller, was a breach of warranty action for the sale of goods and was barred by the U.C.C. statute of limitations. We also ruled that whether the statute of limitations for a defective real estate improvement barred the City's negligence claim against Short–Elliott, the consulting engineers, depended on when the City discovered or had reason to discover the alleged defects in the defendant engineer's design. This, we said, presented a question of fact for trial, and we remanded for further proceedings.

On return to the trial court, defendant Clow Corp. found itself still in the lawsuit because of Short–Elliott's crossclaim against it for contribution or indemnity. So Clow Corp. moved for summary judgment dismissing the crossclaim. At some point in these proceedings (as we were told at oral argument), the City of Willmar settled its lawsuit against Short–Elliott with a general release. All that remains of the litigation, then, is Short–Elliott's claim for contribution or indemnity against Clow Corp. (Prior to Willmar I, the City had settled with Adolfson & Peterson, Inc., the general contractor, on a Pierringer release.) In due course, the trial

1. Minn.Stat. § 336.2–725 (Supp.1993) provides in pertinent part:

   (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
   (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made * * *.

2. Minn.Stat. § 541.051 (1992) provides in pertinent part:

   Subdivision 1. (a) Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of the injury, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury or, in the case of an action for contribution or indemnity, accrual of the cause of action * * *.
   (b) For purposes of paragraph (a), a cause of action accrues upon discovery of the injury or, in the case of an action for contribution or indemnity, upon payment of a final judgment, arbitration award, or settlement arising out of the defective and unsafe condition.

court denied Clow Corp.'s motion for summary judgment, thus leaving the contribution-indemnity claim alive; but the trial court also certified to the appellate court as important and doubtful whether (1) the U.C.C. statute of limitations barred the contribution-indemnity claim, and (2) if so, whether such application was unconstitutional.

The court of appeals reversed the trial court, ruling that the 4–year U.C.C. statute of limitations applied, and that its application was not unconstitutional. *City of Willmar v. Short–Elliott–Hendrickson, Inc.,* 498 N.W.2d 766 (Minn.App.1993).

The key issue before us, then, is whether the consulting engineers' crossclaim against Clow Corp. is governed by the 4–year U.C.C. statute of limitations—in which case the crossclaim is barred; or whether the 2–year statute of limitations of Minn.Stat. § 541.051 for defective improvements to real estate governs—in which case the crossclaim survives. (In this case, 2 years is "longer" than 4 years because the 2 years did not start running until Short–Elliott had settled with the City of Willmar. *See* footnote 2, *supra.*)

Respondent Clow Corp.'s basic argument is that the claim for contribution or indemnity is, at bottom, a breach of warranty claim based on a sale of goods, *i.e.,* the sale of certain rotating cylinders used in the facility; and, as a breach of warranty claim, the claim is barred. Clow Corp. contends that it should not be held liable in contribution or indemnity for a breach of warranty claim when it cannot be held liable to the plaintiff for that very same breach of warranty.

The difficulty with this argument is that contribution and indemnity are independent causes of action; they are venerable equity actions and part of our state's common law. *See, e.g., White v. Johnson,* 272 Minn. 363, 137 N.W.2d 674 (Minn.1965), *overruled on other grounds, Tolbert v. Gerber Indus., Inc.,* 255 N.W.2d 362, 368 n. 11 (Minn.1977)

(adopting comparative fault contribution). Contribution requires, first, a common liability of two or more actors to the injured party, and second, payment by one of the actors of more than its fair share of the common liability. *White,* 272 Minn. at 376, 137 N.W.2d at 677. Indemnity applies when, among other situations, a party fails to discover or prevent another's fault and, consequently, pays damages for which the other party is primarily liable. *See, e.g., Tolbert,* 255 N.W.2d at 366.

Respondent does not really dispute that contribution-indemnity is a separate cause of action,[3] but rather claims that, in this case, it is an action "based on" a breach of contract for the sale of goods. In response, appellant Short–Elliott points out that the U.C.C. statute of limitations is expressly limited to "[a]n action for breach of any contract for sale." Minn.Stat. § 336.2–725.

In fact, contribution-indemnity is not based on contract or tort, although either may secondarily be involved, but on one party paying more than its fair share of a common liability. Common liability exists when both parties are liable to the plaintiff for the same damages, even though their liability may depend on different legal theories. *See, e.g., Farmers Ins. Exch. v. Village of Hewitt,* 274 Minn. 246, 249, 143 N.W.2d 230, 233 (1966). Thus, here, common liability may exist where Short–Elliott's liability to the plaintiff City is for alleged negligence, while Clow Corp.'s liability is for alleged breach of warranty. In short, the nature of the common liability is of secondary importance to the fact of common liability itself. The same holds true for indemnity, where the primary liability of the indemnitor (*e.g.,* breach of warranty) may rest on different grounds than the secondary liability of the indemnitee (in negligence).

■ Next, to get to the issue at hand, it makes no difference that the injured plaintiff's claim against the party from whom

---

**3.** Indeed, in drafting Minn.Stat. § 541.051, the legislature recognized contribution-indemnity as a cause of action in its own right, stating that in the case of "an action for contribution or indemnity," the cause of action does not accrue until payment of a final judgment, arbitration award or settlement. *See* footnote 2, *supra.*

At one point in this litigation, respondent Clow Corp. argued that contribution and indemnity are not substantive rights "but only remedies to enforce some other substantive right." But on analysis this distinction collapses. A cause of action, such as for contribution-indemnity, is a "claim for relief," see Minn.R.Civ.P. 8.01, *i.e.,* it is a remedy for violation of a legal right.

contribution-indemnity is sought is barred by the statute of limitations. Plaintiff is not bringing the contribution-indemnity claim; rather the claim is being brought by Short–Elliott, which, by paying more than its fair share of a common liability shared with another, has sustained an injury different in kind from the plaintiff City's injury. But even more importantly, a statute of limitations defense does not negate liability; it is only a procedural device that is raised after the events giving rise to liability have occurred, and which precludes the plaintiff from collecting on that liability. *See Spitzack v. Schumacher*, 308 Minn. 143, 145, 241 N.W.2d 641, 643 (1976). Indeed, unless the defendant affirmatively asserts the statute of limitations bar, a plaintiff can still recover on its claim against that defendant.

As a practical matter, a party may lose the protection afforded by the statute of limitations against a plaintiff's claim when there are other defendants who do not have a statute of limitations defense to plaintiff's claims; but equity deems it more important that a defendant not evade its liability at the literal expense of a codefendant.[4] However, the statute of limitations defense is frequently dependent on when the plaintiff decides to commence suit, a decision outside the control of the defendant that pays more than its fair share.

■ The well-settled law in Minnesota is contrary to respondent Clow Corp.'s contention. For that matter, the majority of courts of other states that have treated the problem have decided against Clow Corp.'s position.[5] In 1965, in *White v. Johnson, supra*, this court held that a defendant truck driver involved in a personal injury motor vehicle accident could maintain a third party complaint against the City of St. Paul for contribution-indemnity for negligent signing of the highway, notwithstanding that plaintiffs could not sue the city because they had failed to serve the city with a written notice of claim as then required by statute. In so holding, this court noted, "the majority of the courts hold that running of the statute of limitations against one defendant on the plaintiff's claim does not bar a suit for contri-

---

4. There is language in a court of appeals decision, *Housing & Redevelopment Authority v. Agassiz Construction, Inc.*, 476 N.W.2d 781, 787 (Minn.App.1991), suggesting that when the statute of limitations bars plaintiff's claim against one of the defendants, this bar should be treated much like a *Pierringer* settlement, so that plaintiff only can recover from the other codefendant for that defendant's determined percentage of fault, thus obviating the need for such other defendant to seek contribution. We see no merit to this suggestion which would create more problems than it solves. For example, it leaves Short–Elliott, which has already settled plaintiff's claim for a general release, without any recourse even though it may have paid more than its fair share. And it is no solution to the indemnity claim.

5. Courts in 13 jurisdictions have held that the U.C.C. statute of limitations does not apply to contribution-indemnity actions. Those jurisdictions are California, Kansas, Maine, Maryland, Michigan, Missouri, Nebraska, New Hampshire, New York, North Carolina, Pennsylvania, Virginia and West Virginia. *Carrier Corp. v. Detrex Corp.*, 4 Cal.App.4th 1522, 6 Cal.Rptr.2d 565, (1992), *review denied* (June 18, 1992); *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 827 P.2d 24, 37 (1992); *Cyr. v. Michaud*, 454 A.2d 1376, 1384–85 (Me.1983); *Hanscome v. Perry*, 75 Md.App. 605, 542 A.2d 421, 425 (1988); *Ameron, Inc. v. Chemische Werke Huls AG*, 760 F.Supp. 1234, 1236–37 (E.D.Mich.1991) (apply-

ing Michigan law); *City of Clayton v. Grumman Emergency Prod., Inc.*, 576 F.Supp. 1122, 1127 (E.D.Mo.1983) (applying Missouri law); *City of Wood River v. Geer–Melkus Constr. Co.*, 233 Neb. 179, 444 N.W.2d 305, 312 (1989); *Jaswell Drill Corp. v. General Motors Corp.*, 129 N.H. 341, 529 A.2d 875, 878–79 (1987); *McDermott v. City of New York*, 50 N.Y.2d 211, 428 N.Y.S.2d 643, 644–47, 406 N.E.2d 460, 461–63 (N.Y.1980); *Walker Mfg. Co. v. Dickerson, Inc.*, 619 F.2d 305, 310 (4th Cir.1980) (applying North Carolina law); *Thermo King Corp. v. Strick Corp.*, 467 F.Supp. 75, 77 (W.D.Pa.) (applying Pennsylvania law), *aff'd* 609 F.2d 503 (1979); *In re Fela Asbestos Litigation*, 638 F.Supp. 107, 112–13 (W.D.Va. 1986) (applying Virginia law), *rev'd on other grounds sub. nom. Wingo v. Celotex Corp.*, 834 F.2d 375 (4th Cir.1987); *Bradford v. Indiana & Michigan Elec. Co.*, 588 F.Supp. 708, 714 (S.D.W.V.1984) (admiralty case declining to apply West Virginia U.C.C. § 2–725).

Five jurisdictions have held to the contrary. Those jurisdictions are Georgia, Idaho, South Dakota, Utah and Washington. *PPG Indus., Inc. v. Genson*, 135 Ga.App. 248, 217 S.E.2d 479, 480 (1975); *Farmers Nat'l Bank v. Wickham Pipeline Constr.*, 114 Idaho 565, 567, 759 P.2d 71, 73 (1988); *Sheehan v. Morris Irrigation, Inc.* 460 N.W.2d 413, 416–18 (S.D.1990); *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 217–19 (Utah 1984); *Controlled Atmosphere, Inc. v. Branom Instrument Co.*, 50 Wash.App. 343, 748 P.2d 686, 689–90 (1988).

bution against him." 272 Minn. at 371, 137 N.W.2d at 679.

In recent years this court has dealt with the so-called economic loss rule which limits recovery of certain property damages to the remedies provided by the Uniform Commercial Code. *See, e.g., Lloyd F. Smith Co. v. Den–Tal–Ez, Inc.,* 491 N.W.2d 11 (Minn. 1992); *Hapka v. Paquin Farms,* 458 N.W.2d 683 (Minn.1990). Respondent Clow Corp. seeks to take advantage of this line of cases by arguing that to allow Short–Elliott's crossclaim for contribution-indemnity would violate the U.C.C.'s exclusive governance of commercial transactions. Respondent points out that the U.C.C. selected a 4–year statute of limitations for "contractual actions" because it was "appropriate to modern business practices" and "within the normal commercial record keeping period." U.C.C. § 2–725, Official Comment. To allow contribution-indemnity actions, argues respondent, indefinitely extends the 4–year statute of limitations period contrary to the letter and purpose of the U.C.C. Consequently, respondent's contention is that the U.C.C. statute of limitations should apply to Short–Elliott's crossclaim for contribution-indemnity as well as against the City of Willmar's breach of warranty claim.

The short answer to this argument is that appellant Short–Elliott's crossclaim for contribution-indemnity is not based on a contract for the sale of goods but on the equitable proposition that it has paid more than its fair share of a common liability. Respondent's argument is premised on the erroneous assumption that the crossclaim involves the kind of commercial transaction that is within the sole province of the U.C.C.

The U.C.C. applies exclusively only to claims from buyers and sub-buyers in the chain of title (and then only to buyers claiming damages of a particular sort). *See Den–Tal–Ez,* 491 N.W.2d at 17.[6] That is not what we have here. Here the City of Willmar, as owner, and Adolfson & Peterson, Inc., as general contractor, are in the chain of title, but Short–Elliott, the consulting engineer, is not. Short–Elliott never had a contract with the manufacturer-seller, Clow Corp., and consequently was never in a position to bargain for contractual provisions to protect itself against liability. We might also note that sellers of goods are undoubtedly aware of their exposure for personal injury and "other property" claims and hence already have an incentive to keep commercial records for longer than 4 years. But the analysis goes deeper than this.

Respondent Clow Corp. argues, and the court of appeals agreed, that under the U.C.C.'s broad definition of privity, Minn. Stat. § 336.2–318 (1992), Short–Elliott, as consulting engineer, was in privity with the City of Willmar and its general contractor, who are in the chain of title for the component parts sold by Clow Corp. Whether or not there is privity is immaterial for our purposes here. For example, the City of Willmar sued Adolfson & Peterson, the general contractor-buyer, on a negligence claim. If Adolfson & Peterson had paid off the City of Willmar under a general release (instead of settling on a *Pierringer* release), it could have brought an action for contribution-indemnity against Clow Corp., even though the contractor is a buyer in the chain of title. (On the other hand, if Adolfson & Peterson had brought the original lawsuit against Clow Corp. instead of the City of Willmar—admit-

---

**6.** Respondent cites *Willmar I's* language that "any claim arising out of a contract for the sale of goods is governed by the four-year statute of limitations, even when the goods are subsequently incorporated into an improvement to real property." 475 N.W.2d at 80. But in making this statement the court was not addressing Short–Elliott's crossclaim for contribution-indemnity, an issue the parties never raised in *Willmar I;* instead the statement was made in the course of rejecting an argument that the 2–year statute of limitations in § 541.051 should apply to the City's breach of warranty claim as the buyer of a defective product.

In like fashion, respondent takes out of context the general statement in *Hapka v. Paquin Farms,* 458 N.W.2d 683, 688 (Minn.1990), that the U.C.C. was intended to displace common law claims and to provide "a complete and independent statutory scheme enacted for the governance of all commercial transactions." Within the parameters of the economic loss rule, the U.C.C., of course, is exclusive, but appellant consulting engineer, not a party to the sale of the component parts, is outside these parameters.

tedly an unlikely scenario—its breach of warranty claim against Clow Corp. would have been barred just like the City's claim was barred.) To repeat, contribution-indemnity is based on paying more than one's fair share. And this common law remedy is not precluded by the Uniform Commercial Code, for the Code itself states: "Unless displaced by the particular provisions of this chapter, the principles of law and equity * * * shall supplement its provisions." Minn.Stat. § 336.1–103 (1992).

Recently, in *Housing & Redevelopment Authority v. Agassiz Construction Co.,* 476 N.W.2d 781 (Minn.App.1991), the court of appeals, in a case much like this one, held that the defendant engineers-architects' third party complaint for contribution or indemnity against a lumber supplier was barred by the U.C.C.'s 4–year statute of limitations. The court of appeals panel reasoned that the architects were in privity and their contribution-indemnity claim was "based on" breach of warranty, *id.* at 787, so that the U.C.C. statute of limitations should apply. As already explained, we do not accept that reasoning, and consequently, the *Agassiz* holding is overruled.[7]

To sum up, we hold that appellant Short–Elliott's crossclaim for contribution-indemnity against respondent Clow Corp. is not subject to, and is not barred by, the U.C.C.'s 4–year statute of limitations. And we answer the trial judge's first certified question accordingly.

We need not reach the second certified question of whether, if the U.C.C. statute of limitations applied, such application would be constitutional.

---

**7.** The parties also cite *Minnesota Landmarks v. M.A. Mortenson Co.,* 466 N.W.2d 413 (Minn.App. 1991), *rev. denied* (May 10, 1991), where the general contractor's claim for contribution-indemnity against its suppliers was allowed to stand because the general contractor and the owner had entered into a stand-still agreement to suspend the running of the statute of limitations. The *Agassiz* court also pointed out that in *Mortenson* there was a special contractual indemnity agreement between the general contractor and the third party defendant supplier. *Agassiz,* 476

Reversed; question answered and case remanded.

COYNE, J., took no part in the consideration or decision of this case.

N.W.2d at 785 n. 2. Our result here today reaches the same result as in *Mortenson* but on different reasoning.

Interestingly, the *Mortenson* court chose to construe certain allegations in the third party complaint as alleging not a claim for contribution or indemnity but an independent claim for breach of warranty, and held this claim barred by the U.C.C. statute of limitations. *Mortenson,* 466 N.W.2d at 416. Whether this was a correct characterization of the pleadings is, however, arguable.