CONNERS *v.* BENJAMIN I. MAGID, INC.

1. MUNICIPAL CORPORATIONS—MULTIPLE DWELLINGS—FREEDOM FROM VERMIN—STATUTES.

The statute requiring the owner of a dwelling to keep the entire building free from vermin applies to multiple dwellings located in a city (CL 1948, § 125.474).

2. APPEAL AND ERROR—QUESTIONS REVIEWABLE—NEGLIGENCE—VIOLATION OF STATUTE—FREEDOM FROM VERMIN.

Whether or not statute imposing duty upon owner of a dwelling to keep the entire building free from vermin imposes an absolute duty for the violation of which the law recognizes no excuse is not determined in infant's action for injuries from rat bites, where declaration and pretrial statement plainly assert an action for negligence arising out of the asserted violation of the statute (CL 1948, § 125.474).

3. LANDLORD AND TENANT—CHILDREN—FREEDOM FROM VERMIN.

The infant children of signatory tenants as well as such tenants of a multiple dwelling building are entitled to the protection of statute requiring the owner to keep the building free from vermin (CL 1948, § 125.474).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 6] 32 Am Jur, Landlord and Tenant § 660.
[3-5] 32 Am Jur, Landlord and Tenant § 665.
[7] 31 Am Jur, Jury § 47.

4. SAME—VIOLATION OF STATUTE—CHILDREN—RAT BITES—EVIDENCE.

Defendants, owners of multiple dwelling, *held,* guilty of breaching statutory duty of keeping the building free from vermin in view of evidence showing repeated complaint by municipal authorities and only token consideration thereof by defendant, hence, there was no excusing of defendants from violation of statute resulting in injury to son of a tenant, the 5-month-old plaintiff, from rat bites (CL 1948, § 125.474).

5. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — PROXIMATE CAUSE — CHILDREN.

Fact that defendant building owner left material to plug a rat hole with the tenant father of 5-months-old plaintiff and that the father failed to use it before plaintiff was severely bitten by rats would not afford a basis for defense of contributory negligence as such defense is not open to consideration in an action by such a plaintiff for injuries due to negligence, it being necessary to show only that defendant's conduct in failing to keep multiple dwelling free from vermin, was *a,* not *the,* proximate cause of plaintiff's injuries (CL 1948, § 125.474).

6. APPEAL AND ERROR—NONJURY CASE—PREPONDERANCE OF EVIDENCE—VIOLATION OF STATUTE—EVIDENCE—CHILDREN—RAT BITES.

Judgment for defendant multiple dwelling owners in nonjury action for injuries sustained by 5-month-old plaintiff from rat bites is reversed as against the clear preponderance of the evidence which showed they were guilty of actionable negligence in failing to keep the building free from vermin as required by statute (CL 1948, § 125.474).

7. SAME—REMAND—JURY TRIAL—DISCRETION OF COURT—ACTION BY INFANT FOR INJURIES DUE TO RAT BITES.

The discretion of a circuit judge in transferring a case from the nonjury calendar to the jury calendar is recommended for review before trial upon remand of action for injury to 5-month-old plaintiff from rat bites, where defendant multiple dwelling owners were clearly guilty of violation of statute requiring them to keep the building free from vermin, the question of waiver of a jury trial in an action by such a plaintiff being one to merit the independent consideration of the trial judge (CL 1948, § 125.474; Court Rule No 33, § 3 [1945]).

Appeal from Wayne; McDonald (Archie D.), J., presiding. Submitted June 3, 1958. (Docket No.

12, Calendar No. 47,248.)    Decided September 10, 1958.

Case by Nathaniel Conners, an infant, by his next friend, Max Tauber, against Benjamin I. Magid, Inc., a Michigan corporation, Benjamin I. Magid and Ann Magid for injuries sustained when attacked by rats in rodent-infested living quarters. Judgment for defendants. Reversed and remanded.

*James A. Markle,* for plaintiff.

*Davidson, Kaess, Gotshall & Kelly,* for defendants.

BLACK, J. Defendants are owners and landlords of what is photographically depicted as an old wooden apartment building at 8762–8764 Russell street, in Detroit. The building consists of 5 apartments and a store. The infant plaintiff was one of a family to which the upper rear apartment of the building had been let by defendants.

During the early morning of March 13, 1956, the plaintiff (aged 5 months) was found crying in his bed, in the apartment. His face, tongue, hands, feet and other parts of the body had been badly bitten by rats, one of which was seen departing by plaintiff's father as he entered the bedroom. Plaintiff was taken immediately to a hospital where he remained a little over a month. Permanent injuries and scars from the bites have resulted. With particular reference to plaintiff's left thumb and hand, the trial judge stated in his opinion that "the seriousness of the injuries are conceded." *

---

* We note, from easily read X-ray negatives (exhibits 8 and 9) sent here as a part of the original record but not included in either appendix, that the plaintiff infant has permanently lost a part of his left thumb.

During the period preceding plaintiff's injuries repeated demands were made by the department of health, and the department of building and safety engineering (both of Detroit), that the defendant landlords repair and rehabilitate the apartment building in question. In 1951 defendant Benjamin I. Magid was directed to build a rat wall (of wire) around the building and to "see that it extended from 6 inches above the surface of the ground to 24 inches below the surface." Although this directive apparently was complied with at the time, it was found after plaintiff's injuries were sustained that the wire extended only 6 inches below the surface and, at the point where the wire was affixed to the siding of the building, that the siding had partially rotted away, leaving easy entrance for rodents.

Six days prior to the date of plaintiff's injuries an inspector of the department of building and safety engineering went over the building. He testified:

"After making a tour of the building, I noticed visible evidence of rat infestation throughout the building, and upon returning to my office, I referred this condition to the board of health."

A few days prior to such injury date, and either by his own volition or in response to a complaint of rat infestation made by plaintiff's father (there is a dispute of fact about this), defendant Benjamin I. Magid inspected the premises with plaintiff's father and, having been shown a rat hole where the floor joins the baseboard in the apartment, left wire and plaster with plaintiff's father for the purpose of filling and plugging the rat hole. The hole was not blocked or otherwise repaired, either by defendants or plaintiff's father, prior to such injury date. Defendant Benjamin I. Magid did, however, shortly after his inspection of the building, make arrangements for fumigation of the building, the

purpose being that of eliminating rats. The fumigation so arranged did not take place prior to such injury date.

This action for personal injuries, relying particularly on a specific provision of the State housing law and complementary ordinances of Detroit,* was instituted by plaintiff's next friend in the Wayne circuit. The case was tried to the court without a jury. The circuit judge at conclusion of the trial dictated his opinion into the record, the conclusion thereof being: "I think that the defendants did comply with the State law applicable to the situation." Judgment thereupon entered for defendants. Plaintiff appeals.

Section 74, in article 4, of the State housing law (CL 1948, § 125.474 [Stat Ann 1958 Rev § 5.2846]) reads as follows:

"Sec. 74. * * * Every dwelling and every part thereof shall be kept clean and shall also be kept free from any accumulation of dirt, filth, rubbish, garbage or other matter in or on the same, or in the yards, courts, passages, areas or alleys connected therewith or belonging to the same. The owner of every dwelling shall be responsible for keeping the entire building free from vermin. The owner shall also be responsible for complying with the provisions of this section except that the tenants shall be responsible for the cleanliness of those parts of the premises that they occupy and control."

It is not disputed that this section applies to the situation before us; that defendants bore continuously, to the time of plaintiff's injuries, whatever burden the statute relevantly imposes, and that the case on review thus refines determination of its issues to the sufficiency of evidence sustaining plain-

---

* For specific provisions in ordinance relative to the situation here, see Ordinance No 204–E, Municipal Code of Detroit (1954), p 485 et seq.—REPORTER.

tiff's right, if any, to reversal on assigned ground that the judgment below "is against the preponderance of the evidence" (See Court Rule No 64 [1945]).

Plaintiff's declaration and the pretrial statement are plainly couched in terms of a cause of action for negligence arising out of the asserted violation of this statute. Accordingly, the question whether such statute imposes an absolute duty, for the violation of which the law recognizes no excuse, is one we need not consider.

Approaching the case from the thrust of the declaration and pretrial summary thereof, we find that the first question is whether by indisputable or clearly preponderating proof it was shown that defendant was guilty of a violation of the statute. Further, and if this initial question is to receive an affirmative answer, then the next and decisive question is whether it was shown by similar weight of proof that the plaintiff's injuries were caused in whole or in part by such violation.

The statute applies to the city of Detroit (*Lebovics* v. *Howie,* 307 Mich 326). It was enacted, in part, for the protection of tenants lawfully in possession of dwellings coming within scope of said chapter 4 (*Morningstar* v. *Strich,* 326 Mich 541), and this infant plaintiff is as much entitled to its protection as are the signatory tenants themselves. The duty of the defendant landlords—that of responsibility for keeping the entire building free from vermin—was steadily breached by them. Of that there can be little question. The record is replete with evidence of complaint and notice to defendants having to do with rodent infestation. Previous municipal orders, looking toward critically required corrective action, received only token consideration by defendants. A week prior to the occasion of plaintiff's injuries defendant Benjamin I. Magid was personally informed of conditions which, if let to continue,

would amount (as applied to this multiple-apartment building) to a compounded violation of the second sentence of said section 74. All he did was to leave wire and plaster with plaintiff's father and make leisurely arrangements for fumigation of the building. Defendants, re-alerted by this immediate notice, are in no position from a legal standpoint to excuse or ask excuse of such evident violation.

Defendants apparently labor under some misapprehension regarding effect of the father's action or inaction as a causative force. The right of action considered here belongs to the infant plaintiff; no one else. No question of contributory negligence is open to defensive or other consideration. What the father did or did not do is quite irrelevant, the now refined issue being whether it was shown—by a clear preponderance of the evidence—that defendants' proven violation of the statute constituted the or one of the proximate causes of plaintiff's injuries. To this question our answer manifestly must be affirmative. The child would not have been bitten— nay, gnawed, and eaten upon—had the defendants done even a fair job of performance of duty under said section 74.

The trial judge released defendants from liability for stated reasons, his ultimate conclusion of fact being "that the owners did do everything, as much as they had notice of," and that defendant Benjamin I. Magid "had contacted a vermin exterminator who did go down there and make the necessary arrangements to get rid of rats, which shows he (defendant Benjamin I. Magid) was on the job." Here we find no legal or reasonable ground for excusing defendants' violation of the statute. And this we affirm without deposited inference—either way—that excuses are or are not legally available for proven violation of such a statute.

By a clear preponderance—we well might say over-whelming weight—of the evidence, defendants were shown as having been guilty of actionable negligence according to rules quoted from *Annis* v. *Britton,* 232 Mich 291, in *Morningstar* v. *Strich, supra.* The judgment for defendants is therefore reversed and the case is remanded to circuit for new trial, with costs to plaintiff. On such remand, the plaintiff being an infant and the question of waiver of jury trial being one meriting independent consideration of the trial judge, we recommend that the discretion provided by section 3, of Court Rule No 33 (1945), be reviewed prior to trial.

SMITH, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred with BLACK, J.

DETHMERS, C. J., and CARR and KELLY, JJ., concurred in the result.